IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:17-CV-00997-WO-JEP

NATIONAL QUARRY SERVICES, INC., )
)
       Plaintiff, )
)
v. )
)
FIRST MERCURY INSURANCE )
COMPANY, INC., )
)
       Defendant. )

**DEFENDANT FIRST MERCURY INSURANCE COMPANY, INC.'S
RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant First Mercury Insurance Company, Inc. ("First Mercury") submits this Response to Plaintiff National Quarry Services, Inc.'s ("National Quarry") Motion for Judgment on the Pleadings [Doc. 16]. First Mercury asks that National Quarry's Motion be denied and that its own Motion [Doc. 14] be granted.

    **I.**    **RESPONSE TO NATIONAL QUARRY'S STATEMENT OF FACTS**

The Parties agree that the sole issue to be resolved by these cross-motions is whether First Mercury owes a duty to defend National Quarry in underlying state court litigation in Alabama.[1] The briefing before the Court also shows that the key inquiry is whether allegations that National Quarry's "blasting activities" – defined as the violent upheaval of earth – are excluded by an earth movement endorsement in First Mercury's general liability insurance policy ("the First Mercury Policy"). That endorsement states:

---

[1] Case No. CV-16-900379; *Timothy R. Bell, et al v. ASI Constructors, Inc.*; In the Circuit Court of Cullman County, Alabama ("the Underlying Litigation").

SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and SECTION I – COVERAGES PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and SECTION I – COVERAGES BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions are amended and the following is added:

This insurance does not apply to:

"Bodily injury" or "property damage" directly or indirectly arising out of, caused by, resulting from, contributed to, aggravated by or related to the subsidence, settling, settlement, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, rising, *heaving*, landslide, flood or mud flow, earthquake, volcanic eruption or other tectonic processes or *any other movement of land or earth, however caused, and whether by natural, manmade, accidental or artificial means.* This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the "bodily injury" or "property damage."

We shall have no duty or obligation on our part under this insurance to defend, respond to, investigate or indemnify any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

This exclusion also applies to any obligation to, share damage with, repay or indemnify someone else who must pay damages because of such "bodily injury" or "property damage."

[Doc. 3-1 at page 44] (emphasis added).

Because the facts alleged against National Quarry solely involve "blasting activities" – the violent disruption of land – the actions all involve excluded conduct. Therefore, based on the language of the underlying pleading and the language of the insurance policy, First Mercury does not owe National Quarry a duty to defend.

## II.     SUMMARY OF FIRST MERCURY'S POSITION

First Mercury contends that judgment should be rendered in its favor because the plain facts alleged against National Quarry only involve conduct expressly excluded by its general liability insurance policy. While National Quarry hypothesizes how other claims may be covered, North Carolina law is clear that the Court should only look to the facts alleged in the Underlying Litigation. Doing so shows that National Quarry's claim is not covered and that First Mercury does not owe a duty to defend National Quarry.

Although National Quarry challenges the inclusion of an earth movement exclusion in an insurance policy issued to a quarrying company, its arguments are misplaced. The First Mercury Policy is one of <u>general</u> liability that applies to a variety of risks; it was not written to apply to National Quarry's specific business activities. Even National Quarry's hypotheticals show that coverage would be available for a number of claims. Moreover, North Carolina courts have recognized the prudence of excluding coverage for dangerous operations in general liability policies. Doing so encourages the insured to properly perform its operations, and thereby places the risk (or decision to purchase specialized coverage) on the party best able to control it. Therefore, the Court should deny National Quarry's Motion for Judgment on the Pleadings and grant First Mercury's Motion.

## III.     ARGUMENT

### A.     Applying the Correct Standard Shows that First Mercury's Position Is Correct

National Quarry attempts to confuse the issues before the Court by arguing that First Mercury applied the incorrect standard in determining the duty to defend. But National Quarry's arguments ignore the clear ruling of the Supreme Court of North Carolina that the duty to defend analysis begins by comparing the facts alleged in the underlying pleadings to the terms of the

policy. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 610 (2010). An insurer owes a duty to defend if the facts are within the scope of coverage, but even meritorious allegations cannot obligate an insurer to defend if the alleged injury meets a policy exclusion. *Id.* In making this inquiry,

> [T]he question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury.

*Id.*

Applying those rules to this case shows that the facts alleged against National Quarry are not covered by the First Mercury Policy. The facts allege that National Quarry engaged in blasting activities that proximately caused their damages. [Doc. 3-5 at pages 6-8]. The factual allegations also define "blasting activities" to be the violent upheaval of a natural mass of land. *Id.* The underlying allegations do not assert any other type of conduct or cause of damages. The operative terms of the First Mercury endorsement specifically exclude coverage for any type of damages "directly or indirectly arising out of…the…shifting, eroding, rising, heaving…or any other movement of land or earth, <u>however caused</u>, and whether by natural, manmade, accidental or artificial means." [Doc. 3-1 at page 44] (emphasis added). Thus, comparing the plain language of the facts with the exclusion shows that First Mercury does not owe a duty to defend.

Although National Quarry argues that "concussions" may not involve the movement of land, the actual factual allegations – which must be taken as true – directly link any air concussions to blasting activities that involve the violent upheaval of land. *Harleysville Mut. Ins. Co.*, 364 N.C. at 7 ("[T]he facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy.") The sole allegation involving "concussions" specifically states that "[b]lasting activities are grounds of the imposition of strict liability

4

because of the possibility of harm caused both by debris hurled through the air and harm caused by vibrations and concussions travelling ***through the land***." (emphasis added) These allegations are clear that the concussions are not air waves that travel apart from the earth, but are inextricably tied to the violent upheaval of earth caused by "blasting activities."

Even if the Court were to assume that some concussions may have traveled through the air, those facts would still be excluded because of the endorsement's "concurrent causation" requirement. For example, in *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, an insurer did not owe a duty to defend an insured because allegations of negligent hiring were inextricably intertwined with the excluded use of an automobile. 176 N.C. App. 83, 89, 625 S.E.2d 622, 625 (N.C. App. 2006). That court explained that because the various allegations were intertwined with excluded conduct and the policy at issue excluded conduct "concurrently caused" by the use of an automobile, no duty to defend was owed. *Id.* The same is true in this case. The underlying allegations begin and end with National Quarry's blasting causing the violent upheaval of land. Regardless of whether any concussions traveled through the air, they could not have occurred without the excluded conduct.

Moreover, National Quarry's hypothetical examples are irrelevant because North Carolina courts have been clear that the Court "need not consider such hypothetical injuries when the facts show that the actual injuries did not result from a cause separate from the [excluded conduct]." *Id. See also Greenwich Ins. Co. v. Med. Mut. Ins. Co. of N. Carolina*, 88 F. Supp. 3d 512, 517 (E.D. N.C. 2015) aff'd, 667 Fed. Appx. 385 (4th Cir. 2016); *Great Divide Ins. Co. v. Midnight Rodeo, Inc.*, No. 5:08-cv-204-F, 2010 WL 2077162, at *5-7 (E.D. N.C. May 24, 2010). As a result, even assuming that the allegations regarding concussions are true, they would still not fall within the scope of coverage.

**B.     The Earth Movement Exclusion Is Not Ambiguous**

National Quarry incorrectly asserts that the Earth Movement exclusion relied upon by First Mercury is ambiguous. But National Quarry does not advance any competing, much less reasonable, interpretation of the exclusion's terms. The Supreme Court of North Carolina has been clear that to be ambiguous, a policy provision must "[be] fairly and reasonably susceptible to either of the constructions for which the parties contend." *Harleysville Mut. Ins. Co.*, 364 N.C. at 10. Because National Quarry does not offer an alternative interpretation of the Earth Movement exclusion's terms, it cannot show an ambiguity.

Indeed, National Quarry would have a difficult time making such an assertion because the terms of the Earth Movement exclusion have been upheld by multiple courts. *Brice v. State Farm Fire & Cas. Co.*, 761 F.Supp.2d 96, 100 (S.D.N.Y. 2010) (applying subsidence exclusion to bar coverage for contractor's damage of nearby homes); *State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 243, 245 (Fla. Dist. Ct. App. 2002) (applying earth movement exclusion to bar coverage where plaintiff's home was damaged "by earth movement below the structure of the house" "caused by construction blasting near their property"). North Carolina courts have also routinely upheld exclusionary terms that rely upon "arising out of" and "concurrent causation" clauses found in the First Mercury Policy. *Ideaitalia Contemporary Furniture Corp. v. Selective Ins. Co. of Am.*, 515CV00016RLVDSC, 2016 WL 7238818, at *4 (W.D. N.C. Dec. 14, 2016) ("North Carolina recognizes and regularly enforces anti-concurrent causation clauses."); *Builders Mut. Ins. Co. v. Glascarr Properties, Inc.*, 202 N.C. App. 323, 326, 688 S.E.2d 508, 511 (2010).

To further its ambiguity arguments, National Quarry also relies on irrelevant hypotheticals. But once again, National Quarry's position is contrary to North Carolina law. As

6

explained by another federal district court, "[w]hen determining whether a provision is ambiguous or valid, the question is whether such ambiguity or invalidity exists when applied to the facts before the court, not whether a provision may be ambiguous or invalid in a hypothetical scenario." *Scottsdale Ins. Co. v. Children's Home Society of N.C.*, No. 5:12-cv-81-FL, 2013 WL 3354506 (W.D. N.C. July 3, 2013), citing *Register v. White*, 358 N.C. 691, 700, 599 S.E.2d 549, 556 (2004). In this case, there is no ambiguity between pleadings that allege the "violent upheaval of earth" proximately caused damages, and policy language that excludes all damage arising from the rising or heaving of earth. National Quarry can hypothecate and speculate all it wants, but none of that changes the facts pled in the Underlying Litigation, nor can they be used to demonstrate an ambiguity. Therefore, National Quarry's attempts to create ambiguity where none exists, fail as a matter of law.

C.  The "Central Business Activities" Exception Does Not Apply

National Quarry's real reason for trying to advance an ambiguity argument is so that it can take advantage of a narrow "central business activities" exception. That "narrow circumstance" applies when "an ambiguity exists between application of the [particular] exclusion to the particular facts alleged in the underlying actions and the insured's primary business activity itself." *Federal Ins. Co. v. Southern Lithoplate, Inc.*, 7 F.Supp.3d 579, 586 (E.D. N.C. 2014), citing *West Am. Ins. v. Tufco Flooring E. Inc.*, 104 N.C. App. 312, 320-21, 409 S.E.2d 692, 697-98 (1991), *overruled on other grounds by Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000).[2] If such an ambiguity exists, the contract will be construed against the drafter and as a "reasonable person in the position of the insured would have understood it to mean." But that narrow exception does not apply here.

---

[2] The Supreme Court of North Carolina overruled *Tufco* with respect to the "trigger" date for coverage under a CGL policy and because of the *Tufco* court's failure to follow "well-established North Carolina law that the language of the insurance policy controls." *Gaston County*, 351 N.C. at 305, 524 S.E.2d at 565.

7

The *Tufco* court was the first to recognize such an exception due to the unique circumstances of that case. In *Tufco*, a poultry farm hired the insured, Tufco, to resurface floors at one of its chicken processing facilities. *Tufco*, 104 N.C. App. at 314. The chicken produced from that facility was later found to be contaminated. *Id.* The poultry farm then sought reimbursement from Tufco under the theory that vapors from the freshly applied resurfacing material must have caused the contamination. *Id.* Tufco's insurer denied any duty to defend based primarily on a pollution exclusion provision in its policy. *Id.* Tufco, however, asserted that doing so created an ambiguity because it had specifically purchased "completed operations" coverage that would apply once its jobs had been completed. *Id.* at 319. The court agreed with Tufco and ruled that the ambiguity required reading the pollution exclusion in favor of coverage. *Id.* at 320.

Since *Tufco*'s ruling, North Carolina courts have limited its holding and recognized that the exception cannot be read so broadly that it would eviscerate a policy exclusion simply because it involved an insured's central business activity. *Southern Lithoplate*, 7 F.Supp.3d at 586; *New NGC, Inc. v. ACE Am. Ins. Co.*, 105 F.Supp.3d 552, 565 (W.D. N.C. 2015). For example, *Tufco*'s holding did not apply in *Southern Lithoplate*, where the insured argued that a pollution exclusion should not apply because its business dealt solely with photographic chemicals. 7 F. Supp.3d at 586. The *Southern Lithoplate* court explained that allowing insureds to "cherry-pick statements" from *Tufco* to suggest the possibility of coverage simply because an exclusion addresses its primary business activity would rewrite insurance policies. *Id.* at 587.

Likewise, in *Triangle Paving*, another federal district court limited *Tufco*'s application. *Pennsylvania Nat'l Mut. Ins. Co. v. Triangle Paving, Inc.*, 973 F.Supp. 560, 564 (E.D. N.C. 1996). In that case, an insured construction company dislodged sediment during its operations

8

that damaged a home downstream. *Id.* The company's insurer denied coverage based on a total pollution exclusion clause, but the insured challenged the denial based on an assertion that it did not consider sediment to be a "traditional" pollutant. *Id.* The court, however, rejected the insured's arguments and explained:

> [The insured's] argument is tautological and defies common logic. If [the insured's] reasoning were adopted, an insured could always create an ambiguity by claiming that it did not interpret an exclusion to apply to its particular conduct. Ambiguities cannot be manufactured so easily.

*Id.*

National Quarry makes similar arguments in this case. Under the logic espoused by National Quarry, no exclusion for earth movement could ever apply to mining or quarrying companies, or perhaps even to construction companies. Simply because National Quarry does not consider the allegations against it to be traditionally encompassed by earth movement exclusions does not mean that the plain language of the First Mercury Policy does not apply. Therefore, its *Tufco*-based arguments fail like the other challenges previously rejected by North Carolina federal courts.

**D.     Logic Supports Including Earth Movement Exclusion in the First Mercury Policy**

The real thrust of National Quarry's argument is not based on plain language, but on National Quarry's after-the fact unhappiness with the inclusion of an earth movement exclusion in a policy issued to a quarrying company. That argument ignores that prudence supports including such an exclusion. North Carolina courts have recognized that exclusions targeting key but dangerous aspects of certain insured's operations encourage the insured to use prudence in their operations, rather than relaxing their vigilance because they understand that the operations may be covered. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 698, 340 S.E.2d 374, 381 (1986) ("[I]f an insured knows that liability incurred by all manner of

9

negligent or careless [operations] he is tempted to diminish his precautions and relax his vigilance."). Doing so puts the financial responsibility for dangerous operations on the insured, who has the most control over the circumstances likely to cause damage. *Id.*

Moreover, North Carolina courts have recognized that general liability policies spread risks and are not drafted to address an insured's specific concerns. *Triangle Paving*, 973 F.Supp. at 566 ("Unlike a situation where the policy is crafted to spread the risk of a specific concern, the policies purchased by defendant covered a laundry list of general damages.") The same is true with the general liability insurance policy issued to National Quarry because it could apply in a variety of situations including:

- A person is injured after tripping over earmuffs left over from earlier blasting (an example offered by National Quarry)

- A National Quarry employee physically damages the underlying plaintiff's chicken coops or homes while moving equipment for blasting

- National Quarry employees cut down trees on a neighboring property without permission to make room for their operations

- Explosions caused by National Quarry's blasting ignite fires that damage nearby property

Overall, any number of situations are imaginable where coverage would apply.

Simply because National Quarry believes that these specific operations should be covered by a general liability policy cannot be a basis for rewriting coverage. National Quarry cannot show any impropriety by including an earth movement exclusion in the First Mercury Policy and National Quarry has not shown any legitimate reason for not enforcing the exclusion. Accordingly, First Mercury requests that the Court rule that it does not owe National Quarry a duty to defend in the Underlying Litigation.

## VII. CONCLUSION

For the reasons set forth above, First Mercury requests that this Court enter judgment and rule that it does not owe a duty to defend National Quarry in the Underlying Litigation.

Respectfully submitted, this the 23rd day of February, 2018.

        **GOLDBERG SEGALLA, LLP**

        /s/David L. Brown
        David L. Brown
        N.C. State Bar No.: 18942
        Email: dbrown@goldbergsegalla.com
        800 Green Valley Road, Suite 302
        Greensboro, NC 27408
        Phone: 336-419-4900
        Facsimile: 336-419-4950
        *Attorney for Defendant*
        *First Mercury Insurance Company, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.3(d) of the Local Civil rules of the United States District Court for the Middle District of North Carolina, counsel for Defendant First Mercury Insurance Company, Inc. certifies that the foregoing DEFENDANT FIRST MERCURY INSURANCE COMPANY, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, excluding caption, signature lines, and certificates of service, is less than 6,250 words as reported by the word-processing software.

This the 23rd day of February, 2018.

**GOLDBERG SEGALLA, LLP**

/s/David L. Brown
David L. Brown
N.C. State Bar No.: 18942
Email: dbrown@goldbergsegalla.com
800 Green Valley Road, Suite 302
Greensboro, NC 27408
Phone: 336-419-4900
Facsimile: 336-419-4950
*Attorney for Defendant*
*First Mercury Insurance Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing DEFENDANT FIRST MERCURY INSURANCE COMPANY, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS was filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that on this date, a copy of the foregoing DEFENDANT FIRST MERCURY INSURANCE COMPANY, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS was served via first-class mail, postage prepaid, addressed to the following:

Allen T. Wiggins
BUGG & WOLF, P.A.
P.O. Box 2917
Durham, NC 27715
*Attorney for Plaintiff*
*National Quarry Services, Inc.*

This the 23rd day of February, 2018.

**GOLDBERG SEGALLA, LLP**

/s/David L. Brown
David L. Brown
N.C. State Bar No.: 18942
Email: dbrown@goldbergsegalla.com
800 Green Valley Road, Suite 302
Greensboro, NC 27408
Phone: 336-419-4900
Facsimile: 336-419-4950
*Attorney for Defendant*
*First Mercury Insurance Company, Inc.*

13

Case 1:17-cv-00997-WO-JEP   Document 19   Filed 02/23/18   Page 13 of 13