IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO.: 1:17-CV-997

| | |
|---|---|
| NATIONAL QUARRY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST MERCURY INSURANCE COMPANY, INC., <br><br> Defendant. | PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS |

Plaintiff National Quarry Services, Inc. ("NQS") submits this Reply to Defendant First Mercury Insurance Company, Inc.'s ("First Mercury") Response Brief [Doc. 19].

## INTRODUCTION

First Mercury's Response Brief raises two basic issues. The first is whether the facts alleged in the Underlying Complaint are within the policy's scope of coverage or whether the Subsidence Exclusion removes coverage. The second is whether the policy's language is ambiguous, particularly the Subsidence Exclusion.

First, the allegations in the Underlying Complaint are covered under First Mercury's insurance policy. Because First Mercury has ignored most of the facts actually alleged and the Cullman Plaintiffs did not allege that they were harmed by land movement underneath their specific properties, the Subsidence Exclusion, even if valid, does not apply and First Mercury has a duty to defend.

1

Second, the Subsidence Exclusion is ambiguous and should be interpreted in NQS's favor. If this Court were to adopt First Mercury's interpretation of the Subsidence Exclusion, then the effect would be to exclude NQS's primary operations from coverage.

**ARGUMENT**

A. **First Mercury Has Ignored the Underlying Complaint's Actual Allegations in an Effort to Deny Coverage.**

The facts as alleged in the Underlying Complaint fall within the policy's standard coverage provisions. The question is whether, based on the facts as alleged, the Subsidence Exclusion removes coverage that would otherwise be afforded to NQS. First Mercury narrowly argues that the only pertinent allegations are those that (1) state NQS engaged in blasting activities, and (2) define "'blasting activities' to be the violent upheaval of a natural mass of land." Doc. 019 p. 4. First Mercury then wrongly argues that the factual allegations do not "assert any other type of conduct or cause of damages" and that the Subsidence Exclusion removes coverage. *Id.*

First Mercury ignores most of the Underlying Complaint's actual allegations. First, the Underlying Complaint does *not* define the term "blasting activities." Instead, it generally defines "blasting" as "the violent disruption of a natural mass of land through the use of explosives." Doc. 03-5 ¶ 31. This distinction is important because, as alleged in the Underlying Complaint, the "blasting activities" encompass more conduct than just blasting, including calculating blast specifications, surveying the geographical area around the blast, and monitoring the blast. Doc. 3-5 ¶¶ 17, 26.

2

Second, the Underlying Complaint provides an extensive list of conduct that allegedly caused the Cullman Plaintiffs' damage. The alleged conduct includes:

- Failing to survey the geographical area around the blasting area,
- Inappropriately formulating blasting specifications,
- Negligently conducting blasting activities,
- Failing to supervise blasting activities, and
- Failing to monitor blasting activities.

Doc. 3-5 ¶¶ 17, 26. Notably absent is land movement.

Third, the Underlying Complaint does *not allege* that land underneath the Cullman Plaintiffs' properties moved. Nor is there any allegation that land movement underneath the Cullman Plaintiffs' properties caused their damages. In fact, other than the one general definition of "blasting" in the Strict Liability Count, the Underlying Complaint does not contain any specific allegations that any land moved.

First Mercury also argues that NQS's discussion of potential or hypothetical causes of harm is irrelevant, Doc. 19 pp. 3, 5, 6-7, and that the cause of the Cullman Plaintiffs' harm is clear. Doc. 19 p. 5. In fact, the Cullman Plaintiffs only allege cause in cursory fashion – as "a direct and proximate cause of the defendant's" blasting activities and/or other acts and omission. Doc. 3-5 ¶¶ 19-24. Because the actual cause is ambiguous, it is appropriate for this Court to consider multiple potential causes of harm. *See Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 245, 742 S.E.2d 803, 810 (2013) ("There is a duty to defend [w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy.") (quotations removed).

First Mercury attempts to substitute the Underlying Complaint's general definition of blasting in lieu of a specific allegation alleging that the Cullman Plaintiffs' harm was

3

caused by earth movement. That definition, however, is not an allegation of cause, but a generic definition describing why strict liability should apply. Doc. 3-5 ¶ 31. Moreover, First Mercury has not and cannot cite to a specific allegation in the Underlying Complaint that alleges the Cullman Plaintiffs were harmed by land movement.

First Mercury fails to follow its own advice – to assume the allegations in the Underlying Complaint are true. Instead, First Mercury cherry picks the facts it wants, which includes focusing only on blasting while ignoring other conduct that allegedly caused the underlying damages. *See* Doc. 19 p. 4.

When *all* of the Underlying Complaint's allegations are taken as true, it becomes clear that the alleged conduct is not simply land movement as First Mercury contends and that there are sufficient facts to trigger a duty to defend under the policy.

**B. First Mercury's Concurrent Causation Analysis is Flawed Because It Improperly Equates "Blasting" with "Land Movement."**

First Mercury argues that even if some of the Cullman Plaintiffs' damages were caused by conduct other than land movement, the Subsidence Exclusion's "concurrent causation" language still prevents coverage. Doc. 19 p. 5.

For support, First Mercury relies upon *North Main Constr., Ltd.* There, third parties were injured when the insured's employee "drove while intoxicated, crossed the median on Interstate 40, and struck [them] with [the insured's] automobile." *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 176 N.C. App. 83, 87, 625 S.E.2d 622, 624 (N.C. App. 2006). Those facts were specifically alleged and were undisputed. *Id.* The third parties also alleged that the insured was negligent in hiring, supervising, and retaining the

4

employee. *Id.* at 89, 625 S.E.2d at 625. The insured's insurance contract contained an automobile exclusion that excluded bodily injury and property damage from the use of the insured's automobiles. *Id.* at 87, 625 S.E.2d at 624.

The issue was whether the automobile exclusion applied to exclude all coverage, despite allegations of negligent hiring, supervision, and retention. *Id.* at 87, 625 S.E.2d at 624. "In determining whether an automobile exception applie[d], this Court look[ed] to the actual causes of a given injury and consider[ed] whether a cause separate from the use of a vehicle resulted in those particular injuries." *Id.* at 89, 625 S.E.2d at 625. Essentially, the court applied a two-step test: (1) determine the actual causes of the injury, and (2) determine whether causes separate from the excluded conduct could have caused the injury. *Id.* There, it was undisputed that use of the automobile was a cause of the injuries and the court therefore found that the automobile exclusion applied. *Id.*

Here, First Mercury contends that as long as land moves and there is damage, the Subsidence Exclusion removes coverage regardless of actual cause or where land movement actually occurred. Doc. 19 p. 5. However, First Mercury misses the first step in the test – that land movement must be an actual cause of the injuries. *See Builders Mut. Ins. Co.*, 176 N.C. App. at 89, 625 S.E.2d at 625. The Underlying Complaint does not allege that land movement caused the Cullman Plaintiffs' injuries.

First Mercury tries to get around this by incorrectly equating blasting with land movement and treating them interchangeably. First Mercury has to do this because the Subsidence Exclusion does not specifically exclude coverage for "blasting". First Mercury's argument, however, is incorrect because land movement is more properly

5

viewed as one effect of blasting. Other possible effects are vibrations, concussions, shock waves, noise, flying debris, and as noted by First Mercury's brief, explosions and fire. All of these are possible effects of blasting and can cause damage separate and independent of land movement.

First Mercury actually recognizes this distinction thereby belying its entire argument. Doc. 19 p. 10. Five pages after its concurrent causation discussion, First Mercury provides examples of when the CGL policy would provide coverage. Doc. 19 p. 10. One example is when "[e]xplosions caused by National Quarry's blasting ignite fires that damage nearby property." Doc. 19 p. 10.

In First Mercury's example, the blast generates at least two potential causes of harm – fire and land movement. Even though the land presumably moved at the blast site, harm away from the blast site is covered because the fire was independent of the land movement. Thus, simply because two potential causes of harm are generated by the same event does not mean they are intertwined or inseparable.

Similarly, here, the Cullman Plaintiffs allege many effects resulting in a range of harms. Doc. 3-5 ¶¶ 19-24. Thus, the Cullman Plaintiffs' harms could have a number of causes, many of which are independent of land movement. Doc. 18 pp. 12-16. Because the Cullman Plaintiffs' have not alleged land movement as an actual cause of their harm and blasting generates independent potential causes of harm, First Mercury's concurrent cause argument fails.

6

Case 1:17-cv-00997-WO-JEP   Document 22   Filed 03/09/18   Page 6 of 14

### C. The Subsidence Exclusion is Ambiguous.

In its second and third arguments, First Mercury contends the Subsidence Exclusion is not ambiguous. Doc. 19 p. 6-9.

"An ambiguity exists in a contract when either the meaning of words or *the effect of provisions* is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004) (emphasis added). Further, "[a]n ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions." *Id.* Thus, in determining ambiguity the context, not just the language, matters.

The insured's intent also matters. An insurance contract "should be given that construction which *a reasonable person in the position of the insured* would have understood it to mean." *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978) (emphasis added). In determining whether the insurance contract is ambiguous, "the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." *McDowell Motor Co. v. New York Underwriters Ins. Co.*, 233 N.C. 251, 254, 63 S.E.2d 538, 540–41 (1951).

One ambiguity here is whether the Subsidence Exclusion applies when NQS intends to move land. Stated differently, would NQS, whose primary work is rock drilling and blasting, enter into an insurance contract that excludes from coverage damages from *all* land movement?

First Mercury argues that the Subsidence Exclusion language is clear and that the Subsidence Exclusion removes coverage as long as land moves, regardless of NQS's intent.

7

Doc. 19 p. 7. In construing the Subsidence Exclusion, First Mercury relies solely on its language. Doc. 19 p. 6.

First Mercury, however, ignores NQS's central business activity and NQS's intent in entering into the policy. This Court can and should consider both in determining whether the policy is ambiguous. *Grant*, 295 N.C. at 43, 243 S.E.2d at 897; *McDowell Motor Co.*, 233 N.C. at 254, 63 S.E.2d at 540–41. The Court should also consider that a primary purpose of a CGL policy is to protect the insured from third party liability arising from the insured's business operations. *U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc.*, 797 F.3d 116, 122 (1st Cir. 2015) ("The purpose of a commercial general liability insurance policy … is to protect the insured against losses to third parties arising out of the operation of the insured's business.") (quotations removed).

NQS's primary business is "commercial rock drilling & blasting." Doc. 3 ¶ 4. Intentionally moving land is what NQS does; that activity defines the character of its business. *See McDowell Motor Co.*, 233 N.C. at 254, 63 S.E.2d at 540–41. NQS's usual hazards are "damage arising from the rising or heaving of earth." Doc. 19 p. 6; *see McDowell Motor Co.*, 233 N.C. at 254, 63 S.E.2d at 540–41.

If First Mercury's interpretation is accepted – "exclud[ing] all damage arising from the rising or heaving of earth" – then the effect would be to remove coverage for most of NQS's business operations. *See* Doc. 19 p. 7. Given the character of NQS's work that effect is absurd. *See Register*, 358 N.C. at 695, 599 S.E.2d at 553. NQS could not have reasonably interpreted the policy to exclude coverage for most of its work. *See Grant*, 295 N.C. at 43, 243 S.E.2d at 897.

When insurers do interpret exclusion provisions to exclude coverage for claims arising during the insured's usual business, courts have found the provision to be ambiguous and held for the insured. *See*, *e.g. West American Ins. Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 321, 409 S.E.2d 692, 697-98 ("If this Court accepted [the insurer's] interpretation of the CGL policy, we would be allowing an insurance company to accept premiums for a commercial liability policy and then to hide behind ambiguities in the policy and deny coverage for good faith claims that arise during the course of the insured's normal business activity. Such an interpretation would constitute the height of unfairness.").

If First Mercury's real intent was to exclude coverage for all of NQS's blasting work, it should have used more straightforward language. For example, the Insurance Services Office ("ISO") publishes an explosion, collapse, and underground hazard exclusion, which specifically excludes coverage for blasting: "This insurance does not apply to 'property damage' arising out of the 'explosion hazard' . . . 'Explosion hazard' includes 'property damage' arising out of blasting or explosion." *See* ISO Form CG 21 43. The ISO language is much clearer than First Mercury's "Subsidence Exclusion".[1]

Thus, when taking into account NQS's primary line of work and the usual hazards involved, the effect of interpreting the Subsidence Exclusion as First Mercury proposes is unreasonable. This Court should find the Subsidence Exclusion ambiguous and construe it in favor of NQS.

---

[1] First Mercury also apparently thinks the term "Subsidence Exclusion" is unclear. Throughout its brief, First Mercury refers to the Subsidence Exclusion *only* as the "earth movement exclusion." Doc. 19 *passim.*

9

### D. Many of the Cases First Mercury Cites are Distinguishable or Inapposite.

As in its prior briefs, First Mercury cites two cases, without analysis, for support that multiple courts have upheld the terms of this Subsidence Exclusion. Doc. 19 p. 6. Both cases are distinguishable from this matter. First, both are summary judgment cases, while this matter is at the judgment on the pleadings stage. *Brice v. State Farm Fire & Cas. Co.*, 761 F. Supp. 2d 96, 97 (S.D.N.Y. 2010); *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 243 (Fla. Dist. Ct. App. 2002). Second, both involve homeowner insurance policies while the policy here is a CGL policy. *Id.* Third, neither case is a North Carolina case, nor do they apply North Carolina law. *Id.* Fourth, both involve the insured's duty to pay, while at issue here is the duty to defend. *Brice*, 761 F. Supp. 2d at 98; *Castillo*, 829 So. 2d at 243. Thus, these cases are not controlling and are of little persuasive value.

First Mercury also misapplies the *Southern Lithoplate* case. Doc. 19 p. 7-8. In *Southern Lithoplate*, the insured's central business activity was producing lithographic plates and products for the photography industry. *Federal Ins. Co. v. Southern Lithoplate, Inc.*, 7 F.Supp.3d 579, 582 (2014). As a byproduct of that business, the insured "generated, stored, transported and disposed of various hazardous wastes." *Id.* The insured was sued because it environmentally contaminated surrounding property by releasing the hazardous wastes. *Id.* at 585.

The insured argued that whether a pollution exclusion applies "can never be decided on a motion for judgment on the pleadings under *Tufco* because the 'mere possibility' always exists that the pollutants were used in the course of the insured's central business activity." *Id.* at 586. The court rejected the insured's argument because the insured's

10

interpretation of the central business activity exception would eviscerate the "the pollution exclusion in every case in which an insured uses a pollutant in the course of its central business activity." *Id.* The court stressed that the exception applied when an insurer "hid[] behind ambiguities in the policy and deny coverage for good faith claims that arise during the course of the insured's normal business activities." *Id.* at 587.

Here, the underlying dispute involves NQS's central business activity, blasting. When done properly, land *always* moves. And the underlying dispute is appropriately characterized as a blasting, not land movement, case. Doc. 3-5 ¶¶ 19-24 (alleging harm from blasting activities, not land movement). The exclusion at issue here is a subsidence, not blasting, exclusion. Doc. 19 p. 2. Thus, unlike *Southern Lithoplate*, the central business activity exception does apply here because First Mercury is hiding "behind ambiguities in the policy and deny coverage for good faith claims that arise during the course of the [NQS's] normal business activities" – blasting and rock drilling. *Southern Lithoplate*, F.Supp.3d at 587.

Finally, First Mercury cites the *Triangle Paving* case in support of its argument. Doc. 19 pp. 8-9. The court's analysis of *Tufco* in *Triangle Paving*, however, helps NQS. In *Triangle Paving*, the insured's central business activity was "providing site preparation and grading services." *Pennsylvania Nat'l Mut. Ins. Co. v. Triangle Paving, Inc.*, 973 F.Supp. 560, 564 (E.D.N.C. 1996). The insured was sued for contaminating water when sediment dislodged at a construction project. *Id.* at 562. The insurer denied coverage because of a pollution exclusion and the insured argued that the central business activity exception applied. *Id.* at 562, 566. The court distinguished the matter from *Tufco* writing

11

> In *Tufco,* the court noted that the insured's business, installing industrial flooring, necessarily entailed the application of a chemical coating and that the insurer knew about this facet of the business. In comparison, it was not the normal or intended procedure for defendant, in the case at hand, to create and disperse sediment. Whereas the pollutant in Tufco was central to the floor resurfacing and was intentionally applied in order to complete the job, sedimentation was a mere byproduct of defendant's operations at the Henderson construction site.

*Id.* at 566. Thus, the court there found that while the central business activity exception applied in *Tufco*, it did not apply there. *Id.*

Here, unlike the sediment in *Triangle Paving*, land movement is not a byproduct of NQS's central business activity. *See* Doc. 3 ¶ 4. Like the chemical used to install flooring in *Tufco*, NQS's blasting necessarily entails land movement. Land movement is central to NQS's business operations and was intentionally done here to complete the job. Thus, the central business activity exception should apply.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons in NQS's other briefs found at Doc. 18 and 20, NQS respectfully requests that this Court grant its Motion for Judgment on the Pleadings and deny First Mercury's Motion for Judgment on the Pleadings.

This is the 9th day of March, 2018.

/s/ Allen T. Wiggins
Allen T. Wiggins
N.C. Bar No. 28867
Bugg & Wolf, P.A.
Post Office Box 2917
Durham, NC  27715
Telephone: (919) 383-9431
Facsimile: (919) 383-9771
wiggins@buggwolf.com
*Attorneys for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify that this Reply Brief complies with the word count limit set forth in L.R. 7.3(d). The number of words in this Reply Brief, exclusive of the caption, signature lines, certificate of service, and any other cover page or index, according to the word count feature of the word processing software used to prepare it, does not exceed 3,125 words.

This is the 9th day of March, 2018.

/s/ Allen T. Wiggins
Allen T. Wiggins
N.C. Bar No. 28867
Bugg & Wolf, P.A.
Post Office Box 2917
Durham, NC  27715
Telephone: (919) 383-9431
Facsimile: (919) 383-9771
wiggins@buggwolf.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

| | |
|---|---|
| David L. Brown<br>GOLDBERG SEGALLA LLP<br>800 Green Valley Road, Suite 302<br>Greensboro, NC 27408<br>dbrown@goldbersegalla.com<br>*Attorneys for Defendant* | Christopher H. Avery<br>THOMPSON COE COUSINS & IRONS, LLP<br>One Riverway, Suite 1400<br>Houston, TX 77056<br>CAvery@thompsoncoe.com<br>*Attorneys for Defendant* |

This the 9th day of March, 2018.

    /s/ Allen T. Wiggins
    Allen T. Wiggins