IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL QUARRY SERVICES, INC.,   )
                                  )
              Plaintiff,          )
                                  )
     v.                           )        1:17CV997
                                  )
FIRST MERCURY INSURANCE           )
COMPANY, INC.,                    )
                                  )
              Defendant.          )


### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Currently before this court is Defendant First Mercury Insurance Company, Inc.'s Motion for Judgment on the Pleadings, (Doc. 13), and Plaintiff National Quarry Services, Inc.'s Motion for Judgment on the Pleadings, (Doc. 16). Each party asks this court to enter judgment in its favor on the issue of whether, under Plaintiff's commercial general liability insurance policy, Defendant owes a duty to defend Plaintiff against an Alabama lawsuit alleging damages from Plaintiff's blasting operations. The cross-motions for judgment on the pleadings are each brought pursuant to Fed. R. Civ. P. 12(c).

For the reasons that follow, this court finds that Plaintiff's motion should be granted as to the declaratory judgment count and that Defendant's motion should be denied.

Accordingly, judgment will be entered for Plaintiff on the duty to defend issue.

## I.  <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff is a North Carolina corporation that conducts "commercial rock drilling & blasting throughout the Southeastern United States." (Complaint ("Compl.") (Doc. 3) ¶¶ 1, 4.) Plaintiff purchased a commercial general liability insurance policy from Defendant on June 13, 2014, which was effective from June 1, 2014 to June 1, 2015. (<u>Id.</u> ¶ 3; Ex. A, General Liability Policy (the "Policy") (Doc. 3-1).) The Policy provides that Defendant will defend Plaintiff against any lawsuit seeking damages for covered conduct and pay any damages that are ultimately proved at trial. (<u>Id.</u>, Ex. A at 4.) The Policy contains a "Subsidence Exclusion" that reads as follows:

> This insurance does not apply to:
>
> "Bodily injury" or "property damage" directly or indirectly arising out of caused by, resulting from, contributed to, aggravated by or related to the subsidence, settling, settlement, expansion, sinking, slipping, falling away, tilting, caving in, shifting[,] eroding, rising, heaving, landslide, flood or mud flow, earthquake, volcanic eruption or other tectonic processes or any other movement, of land or earth, however caused, and whether by natural, manmade, accidental or artificial means. This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the "bodily injury" or "property damage."

-2-

> We shall have no duty or obligation on our part
> under this insurance to defend, respond to,
> investigate or indemnify any insured against any loss,
> claim, "suit," or other proceeding alleging damages
> arising out of or related to "bodily injury" or
> "property damage" to which this endorsement applies.
>
> This exclusion also applies to any obligation to,
> share damages with, repay or indemnify someone else
> who must pay damages because of such "bodily injury"
> or "property damage."

(Id. at 44.)

While the Policy was in effect,[1] Plaintiff performed "rock drilling & blasting work [] under contract in . . . Cullman County, Alabama." (Compl. (Doc. 3) ¶¶ 7–8.) Plaintiff, as subcontractor, performed blasting work on behalf of the general contractor for the project, ASI Constructors, Inc. (Id., Ex. B, Complaint (the "Cullman Complaint") (Doc. 3-2) at 6–7.) On November 10, 2016, a group of homeowners in Cullman County (the "Cullman residents") filed suit against Plaintiff in the Circuit Court of Cullman County. (See Compl. (Doc. 3) ¶ 7; Cullman Complaint (Doc. 3-2).)

The Cullman Complaint alleges that Plaintiff and other parties were negligent in their blasting operations, are

---

[1] Defendant does not appear to dispute that events giving rise to the Alabama lawsuit occurred within the Policy's effective period. The parties also do not appear to dispute that Plaintiff promptly paid its premiums and otherwise fulfilled its obligations under the Policy.

-3-

strictly liable for damages caused by an ultra-hazardous activity, and committed trespass and nuisance. (Id. ¶¶ 25-43.) The Cullman residents further claim both compensatory and punitive damages for structural impairment to their homes, harm to livestock and other property, and emotional distress. (See id.) The Cullman Complaint defines blasting as "the violent disruption of a natural mass of land through the use of explosives."[2] (Id. ¶ 31.)

After being served with the Cullman Complaint, Plaintiff informed Defendant of the lawsuit. (Compl. (Doc. 3) ¶ 9.) In response, Defendant disclaimed any obligation under the Policy to either defend Plaintiff or to indemnify Plaintiff for damages. (Id. ¶ 10; Ex. C (Doc. 3-3); Ex. D (Doc. 3-4).) Specifically, Defendant asserted that all allegations in the Cullman Complaint "fall within the terms of the Subsidence Exclusion and preclude a present duty to defend National Quarry in the Litigation." (Ex. C (Doc. 3-3) at 3.) After receiving Defendant's letters disclaiming any coverage obligation, Plaintiff brought the instant action seeking a declaratory

---

[2] This definition appears in the section of the Cullman Complaint entitled "Count II — Strict Liability." Because the definition does not appear in a lead-in or introductory section, this court will not assume that the definition applies to all allegations therein.

judgment that Defendant owes a duty to defend Plaintiff against the Cullman Complaint, a declaratory judgment that Defendant must indemnify Plaintiff for any resulting losses, and asserting a breach of contract claim.[3] (Compl. (Doc. 3) ¶¶ 22-28.)

Defendant answered the complaint. (See Doc. 7.) Defendant then moved for judgment on the pleadings, (Doc. 13), and filed a brief in support of its motion. (Doc. 14.) Plaintiff responded in opposition, (Doc. 20); and Defendant replied, ("Def.'s Reply" (Doc. 21).) Plaintiff cross-moved for judgment on the pleadings, (Doc. 16), and filed a memorandum in support of its motion. ("Pl.'s Mem." (Doc. 17).) Defendant responded in opposition, ("Def.'s Resp. Br." (Doc. 19)); and Plaintiff replied, (Doc. 22).

## II. **LEGAL FRAMEWORK**

### A. **Standard of Review**

This court applies the same standard to a Rule 12(c) motion for judgment on the pleadings as to a Rule 12(b)(6) motion to dismiss. Occupy Columbia v. Haley, 738 F.3d 107, 115-16 (4th

---

[3] As both motions for judgment on the pleadings deal solely with the request for declaratory judgment on the duty to defend issue, this court's order will apply only to that specific request. To the extent either party seeks judgment on the breach of contract claim or the indemnification question at this time, this court finds those motions premature and they will be denied.

Cir. 2013). This court assumes the truth of all factual allegations in the complaint, draws all reasonable inferences in favor of the plaintiff, and asks whether the complaint plausibly states a claim for relief. Id. In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When, as here, each party has moved for judgment on the pleadings, this court will grant judgment only when the opposing party has not pleaded facts demonstrating the plausibility of its claim or defense.

When evaluating a Rule 12(c) motion, this court may consider only the pleadings, any exhibits thereto that are essential to the allegations, and matters of public record susceptible to judicial notice. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that documents attached to the complaint may be considered "so long as they are integral to the complaint and authentic").

### B. **Applicable Law**

A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in which the court sits, while applying federal

procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73, 79-80 (1938); Hanna v. Plumer, 380 U.S. 460, 465-66 (1965); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that federal courts are "bound to apply state law" to pendant claims).

Where the insurer and insured are citizens of different states, courts apply "the law of the place where the policy is delivered" to interpret the contract.[4] Myers v. Ocean Accident & Guarantee Corp., 99 F.2d 485, 488 (4th Cir. 1938) (citing Mut. Life Ins. Co. of N.Y. v. Johnson, 293 U.S. 335, 339 (1934)); see also Roomy v. Allstate Ins. Co., 256 N.C. 318, 322-23, 123 S.E.2d 817, 820 (1962) (holding that the law of the state where a contract is entered into governs its interpretation). This court, sitting in diversity jurisdiction, "has a duty to apply the operative state law as would the highest court of the state in which the suit was brought." Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992). If the state's highest court has not addressed an issue, then a "state's intermediate appellate court decisions constitute the

_____

[4] The court has jurisdiction over this action based on diversity of citizenship. (See Compl. (Doc. 3) ¶¶ 1-2.) Because the Policy was delivered to the insured party at its business address in Clemmons, North Carolina, (see Policy (Doc. 3-1) at 1), this court must apply North Carolina substantive law to interpret the Policy.

next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. (internal quotation marks and citation omitted).

**C.** **Interpreting Insurance Contracts**

Under North Carolina law, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). An insurance policy is a contract between the insurer and insured, and this court looks first to the intent of the parties to determine the meaning of policy language. Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380–81, 348 S.E.2d 794, 796 (1986). If the relevant language is clear, then this court must use the plain meaning of the words to give effect to the parties' intent. Id.; see also Walsh v. United Ins. Co. of Am., 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965) (where language is "susceptible of only one reasonable construction, the courts will enforce the contract according to its terms"). When words are not defined in the policy, they are to be given their ordinary, everyday meaning; if a word has multiple meanings "and if the context does not indicate clearly the one intended, [the words are] to be given the meaning most

-8-

favorable to the policyholder . . . ." <u>Wachovia Bank & Trust Co.</u>
<u>v. Westchester Fire Ins. Co.</u>, 276 N.C. 348, 354, 172 S.E.2d 518,
522 (1970).

Language is ambiguous only when it can be reasonably
interpreted in two or more ways. <u>Allstate Ins. Co. v. Runyon</u>
<u>Chatterton</u>, 135 N.C. App. 92, 94–95, 518 S.E.2d 814, 816 (1999).
However, a term is not ambiguous "simply because the parties
contend for differing meanings to be given to the language" —
rather, ambiguity arises only when each proffered interpretation
is reasonable in context. <u>Id.</u>; see also <u>Brown v. Lumbermens Mut.</u>
<u>Cas. Co.</u>, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990) (while
judicial uncertainty about the meaning of language and
disagreement between the parties can be evidence of ambiguity,
neither is conclusive).

When the provision is ambiguous and "susceptible of two
interpretations, of which one imposes liability upon the company
and the other does not, the provision will be construed in favor
of coverage . . . ." <u>Williams v. Nationwide Mut. Ins. Co.</u>, 269
N.C. 235, 238, 152 S.E.2d 102, 105 (1967). Any coverage
exclusions "are to be construed strictly so as to provide the
coverage, which would otherwise be afforded by the policy."
<u>Wachovia</u>, 276 N.C. at 355, 172 S.E.2d at 522–23. Under the
interpretive principle of <u>ejusdem generis</u>, general, catch-all

-9-

language that directly follows a list of specific items is construed to include "only things of the same kind, character and nature as those specifically enumerated." N.C. Ins. Guar. Ass'n v. Century Indem. Co., 115 N.C. App. 175, 191, 444 S.E.2d 464, 473–74 (1994) (quoting State v. Lee, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970)).

**D.    The Duty to Defend**

The insurer's duty to defend, if provided in the policy, "is broader than its obligation to pay damages incurred by events covered by a particular policy." See Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) (the duty to defend is based on allegations in the third-party complaint, whereas the duty to indemnify is "measured by the facts ultimately determined at trial").

North Carolina uses the comparison test: "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id. at 693, 340 S.E.2d at 378; see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010) ("In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy."). The focus

in this inquiry "is on the facts that are pled, not how the claims are characterized." <u>Holz-Her U.S., Inc. v. U.S. Fidelity and Guar. Co.</u>, 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000). "Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy," the insurer has a duty to defend. <u>Waste Mgmt.</u>, 315 N.C. at 691, 340 S.E.2d at 377.

When the third-party complaint alleges both acts that are covered under the policy and acts that are excluded — "a hybrid of covered and excluded events" — the insurer has a duty to defend against all claims. <u>Id.</u> at 691, 340 S.E.2d at 377 n.2. There will be no duty to defend only when the factual allegations in the third-party lawsuit "are not even arguably covered by the policy.," <u>Id.</u> at 692, 340 S.E.2d at 378. Where more than one cause contributes to the alleged injury but the policy states that the exclusion applies regardless of any concurrent causes, then courts will enforce this language and exclude coverage when any one of the multiple concurrent causes is clearly excluded. <u>Builders Mut. Ins. Co. v. Glascarr Props., Inc.</u>, 202 N.C. App. 323, 328, 688 S.E.2d 508, 512 (2010).

III. **ANALYSIS**

A.   **Earth Movement Exclusion**

This court will first evaluate whether the language of the "Subsidence Exclusion" is ambiguous. The exclusion states that the Policy does not apply to:

> "[b]odily injury" or "property damage" directly or indirectly arising out of caused by, resulting from, contributed to, aggravated by or related to the subsidence, settling, settlement, expansion, sinking, slipping, falling away, tilting, caving in, shifting[,] eroding, rising, heaving, landslide, flood or mud flow, earthquake, volcanic eruption or other tectonic processes or any other movement, of land or earth, <u>however caused, and whether by natural, manmade, accidental or artificial means</u>.

(Policy (Doc. 3-1) at 44 (emphasis added).)

Here, Plaintiff argues that the policy is ambiguous as to whether blasting operations are excluded. (Pl.'s Mem. (Doc. 17) at 19-20.) Defendant, on the other hand, argues that the exclusion is unambiguous and by its plain meaning excludes blasting activities involving the "violent upheaval of earth." (Def.'s Resp. Br. (Doc. 19) at 6-7.)

Courts nationwide have taken varied approaches to interpreting earth movement exclusions in insurance contracts. <u>See, e.g.</u>, <u>Powell v. Liberty Mut. Fire Ins. Co.</u>, 252 P.3d 668, 672-74 (Nev. 2011) (summarizing judicial approaches to subsidence exclusions, finding exclusion ambiguous and

-12-

construing it against the insurer); Brice v. State Farm Fire and
Cas. Co., 761 F. Supp. 2d 96, 102 (S.D.N.Y. 2010) (granting
insurer's motion for summary judgment and finding that an earth
movement exclusion covered damage caused by construction on a
neighboring lot); Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d
1082, 1087-88, 1087 n.3 (Fla. 2005) (finding earth movement
exclusion at issue mentioned only naturally-occurring phenomena
and therefore did not cover blasting activities). Specifically,
courts have taken different positions on whether earth movement
exclusions cover only natural phenomena or encompass both
natural and manmade events; this distinction often turns on the
specific language used in the exclusion. Compare Powell, 252
P.3d at 670, 674 (finding that the exclusion was ambiguous and
did not bar a claim for a burst water pipe and foundational
damage, where the policy listed only natural events but stated
that any loss would be excluded despite a concurrent cause),
with Boteler v. State Farm Cas. Ins. Co., 876 So. 2d 1067, 1069-
70 (Miss. Ct. App. 2004) (holding that damage from a burst pipe
was unambiguously excluded).

This court finds that the Policy's subsidence exclusion is
ambiguous and subject to judicial interpretation. The specific
items listed in the exclusion, by their plain meaning, describe

what are typically thought of as naturally-occurring events.[5]
While earthquakes and landslides can be triggered by human
activity, this court finds that the plain meaning of these
phrases includes only natural phenomena. This suggests an intent
to include only this type of event. However, the exclusion's
"catch-all" phrase purports to also capture events caused by
human action. There is thus an ambiguity as to what type of
manmade subsidence occurrences fall under the exclusion.

Defendant appears to argue that dislodged debris and sound
vibrations fall within the exclusion because they are
"inextricably intertwined" with and associated with earth
movement, which is excluded. (See Def.'s Reply (Doc. 21) at 3–
4.) But more than one interpretation of the catch-all phrase is
reasonable. The language could include only movements of land
similar in kind to those specifically listed, under ejusdem
generis, or it could include any movement of land (for example,
if interpreted literally, the exclusion might apply to bar
damage caused by dirt flung from a hole dug by Plaintiff's

---

[5] For example, "earthquake" is defined as "a shaking or
trembling of the earth that accompanies mountain building or
other crustal movements." "Cave-in" is defined as "a place where
earth has caved in." In the opinion of this court, both
definitions suggest the absence of human intervention in causing
the relevant phenomenon. See Webster's Third New International
Dictionary (3d ed. 1986).

workers). This court finds that the exclusionary language is also ambiguous regarding the object of the movement. The language "land or earth" might be limited to large masses of land or tectonic plates, as in the case of the listed natural phenomena, or it may also encompass natural objects resting on or loosely attached to the earth's surface (including rocks and plants).

Applying ejusdem generis, this court finds that the phrase "other movement of land or earth" means the sinking, shifting, rising, or settling of a mass of land. First, while the excluded conduct can be either natural or manmade, the activity must be of a type similar to the specific, listed natural phenomena. This phrase does not encompass the movement of land solely by shoveling or dredging, for example, as these activities alone are not similar in kind to earthquakes, cave-ins or landslides, which involve the sudden shifting movement of a large mass of land.

Second, the language in the exclusion also does not cover the movement of rocks, plants or other surface debris, as opposed to the movement of earth itself, either by dislodging pieces of the earth below the surface or by causing portions of the earth to sink, shift, rise or settle. This conclusion follows naturally from a reading of the exclusionary provision.

Landslides, earthquakes, volcanic eruptions, and tectonic processes each involve the movement of large amounts of earth or sub-surface material. Surface objects such as rocks and plants, on the other hand, do not expand, erode, heave or settle.

This interpretation accords with the cases cited by Defendant and other cases finding that a subsidence exclusion applied to bar coverage, because in these cases the sole conduct at issue was the type of shifting movement of a large mass of earth that was excluded under the relevant policy and would be excluded here. See Brice, 761 F. Supp. 2d at 98 (stating that damage was caused by "faulty underpinning that permitted earth to slide away from the foundation" under plaintiff's house); State Farm Fire and Cas. Co. v. Castillo, 829 So. 2d 242, 243 (Fla. Dist. Ct. App. 2002) (observing that plaintiff's "home sustained extensive cracking damage . . . caused by earth movement below the structure of the house from nearby blasting").

This court finds that the Policy excludes blasting-related damage only to the extent that the resultant harm is caused by the sinking, shifting, rising, or settling of a large land mass. The Policy does not, however, exclude damage caused by dirt or other surface debris propelled through the air, damage caused by noise pollution created by drilling or blasting vibrations, or

related overpressure in the atmosphere from blasting. Finally, this court notes that this reading of the exclusionary language follows the basic interpretive tenet of construing ambiguous provisions "in favor of coverage and against the [insurance] company." Williams, 269 N.C. at 238, 152 S.E.2d at 105.

## B. Cullman Allegations

The Cullman Complaint does include some allegations that are within the scope of the subsidence exclusion. (See Cullman Complaint (Doc. 3-2) at 8 (stating that blasting caused structural damage to houses).) Further, the Policy's subsidence exclusion includes a provision stating that the exclusion shall apply "regardless of any other cause or event that contributes concurrently or in any sequence to the 'bodily injury' or 'property damage.'" (Policy (Doc. 3-1) at 44.) Under North Carolina law, this clause is valid and precludes any argument by Plaintiff that a separate non-excluded event was a concurrent cause of an underlying injury caused, at least in part, by excluded conduct. Glascarr, 202 N.C. App. at 327-28, 688 S.E.2d at 512.

The only issue for this court to decide is whether the Cullman Complaint plausibly alleges any damage caused solely by conduct that is, at least arguably, not excluded by the Policy. This court finds that two allegations in the Cullman Complaint

plausibly allege damage wholly independent from any sinking, shifting, rising, or settling of land.

First, the Cullman residents assert that strict liability may be imposed "because of the possibility of harm caused . . . by debris hurled through the air." (Cullman Complaint (Doc. 3-2) at 12.) Under North Carolina law, strict liability applies to blasting due to the inherent dangerousness of this type of work. See Fagundes v. Ammons Dev. Grp., Inc., ____ N.C. App. ____, ____, 820 S.E.2d 350, 355–56 (2018) (imposing strict liability where blasting dislodged rocks that flew through the air and struck the plaintiff's leg); see also Guilford Realty & Ins. Co. v. Blythe Bros. Co., 260 N.C. 69, 73, 131 S.E.2d 900, 903–04 (1963) (imposing strict liability for damages caused by "concussions and vibrations"). The nature of the injury is not relevant and there is no requirement that a mass of land (as opposed to surface objects) caused the damage; whenever blasting or other ultrahazardous activities create injury, the perpetrator is liable. Id. at 73–74, 131 S.E.2d at 904. The Cullman Complaint alleges a strict liability claim not based on any excluded activity: namely, property damage caused by airborne debris from blasting.

Second, the Cullman residents allege that Plaintiff deprived them of the "quiet use and enjoyment" of their property

and caused them "to suffer mental anguish and emotional distress" by creating a nuisance. (Cullman Complaint (Doc. 3-2) at 13.) The Cullman Complaint does not specify the exact means by which Plaintiff allegedly created a nuisance; however, a reasonable reading of the nuisance claim suggests that the Cullman residents are alleging noise disturbance by vibrations or overpressure from Plaintiff's blasting operations. A nuisance claim based on noise pollution can be proven without any evidence of excluded subsidence. See Hooks v. Int'l Speedways, Inc., 263 N.C. 686, 691, 140 S.E.2d 387, 391 (1965) ("Mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance . . . .").

Under North Carolina law, the fact that some, or even most, of the allegations in the Cullman Complaint are in fact excluded under the Policy does not eliminate the duty to defend, so long as any one factual allegation is arguably covered by the Policy. See Builders Mut., 361 N.C. at 88–89, 637 S.E.2d at 530–31; Waste Mgmt., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. Defendant could "reasonably ascertain facts that, if proven, would be covered by its policy." Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377. Therefore, Defendant has a duty to defend Plaintiff against the allegations in the Cullman Complaint.

## IV.  CONCLUSION

For the foregoing reasons, this court finds that Plaintiff's cross-motion for judgment on the pleadings should be granted as to the declaratory judgment count and denied as to the other requests and counts, and that Defendant's motion for judgment on the pleadings should be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings, (Doc. 16), is **GRANTED IN PART AND DENIED IN PART,** in that Plaintiff's motion is **GRANTED** as to Plaintiff's request for a declaratory judgment on Defendant's obligation to defend in the underlying dispute but **DENIED** as to Plaintiff's request for a declaratory judgment on Defendant's obligation to indemnify for any losses and as to Plaintiff's breach of contract claim.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings, (Doc. 13), is **DENIED WITHOUT PREJUDICE.**

A partial judgment for Plaintiff on the declaratory judgment action shall be entered contemporaneously with this order, stating that Defendant has a duty to defend Plaintiff in the underlying dispute. As described herein, any remaining claims will be addressed at a later time.

This the 11th day of March, 2019.

_____
United States District Judge